## MATTERS AS TO WHICH A CITIZEN OR TAXPAYER MAY NOT SUE ON BEHALF OF THE CITY.

Superior Court of Cincinnati.

ROBERT S. ALCORN v. THE CINCINNATI TRACTION COMPANY, AND ROBERT S. ALCORN v. THE CINCINNATI TRACTION COMPANY, AND THE CINCINNATI STREET RAILWAY COMPANY.

Decided, April 30, 1925.

*Municipal Corporations—Action by a Citizen does not Lie for Recovery of Taxes—Nor can a Citizen or Taxpayer Maintain an Action to enjoin an Increase in Street Railway Fares.*

1. A citizen and taxpayer can not bring an action in his own name for the personal recovery of taxes due a municipality notwithstanding the city solicitor has been requested to bring such suit and has refused to do so.

2. A citizen, taxpayer and street car rider can not bring an action to enjoin the collection of an increased street railway fare under a contract between the city and the traction company without previously requesting the City Solicitor to bring such action and without making the city a party thereto.

3. Article 18, Section 4, of the Ohio Constitution as amended September 3, 1912, confers complete power upon municipalities to own and operate public utilities and to contract with such utilities for product and service and to fix the rate therefor. All legislative enactments restricting, limiting or conflicting with this power are invalid.

4. Previous and final judgments in actions brought by a taxpayer to test the validity of a contract between a municipality and a public utility to which the utility and the city were parties, is *res judicata* in a subsequent action by another taxpayer alleging the invalidity of the same contract or part thereof.

*Robert S. Alcorn* and *Wm. Thorndyke,* for plaintiff.

*Robert A. Taft* and *John B. Hollister,* for Cincinnati Street Railway Company.

*Alfred C. Cassatt* and *Frank F. Dinsmore,* for Cincinnati Traction Company.

MARX, J.

These cases are brought by Robert S. Alcorn. No. 58953 is an action to collect one million and fifty thousand ($1,050,000) dollars, alleged to be due as a tax on the gross earnings

of the Cincinnati Traction Company for the years, 1921, 1922, and 1923, under Ordinance 253-1918 revising the original fifty year franchise granted to the Cincinnati Street Railway Company, August 13, 1896, and leased to the Traction Company, February 21, 1901. In this action the validity of the present franchise (Ordinance 253-1918, August 23, 1918) is asserted as the basis for the claim that a tax is due thereunder.

No. 58950 is an action to enjoin the collection by the Cincinnati Traction Company of a higher rate of fare than five cents on the ground that a higher fare is prohibited by Section 2505-A Ohio Statutes (93 O. L., 214, April 23, 1898), permitting a lease of the Street Railway Company property and franchise to the Traction Company. In this action the validity of the present franchise is attacked, and if the provisions fixing the rate of fare are invalid, the entire franchise is by its terms invalid.

In both cases, the plaintiff sues as an individual. In neither case is the city of Cincinnati made a party, although both cases involved important interests and rights of the municipality and of the citizens thereof.

In the "tax case," the city solicitor was requested to bring the action and refused. However, the plaintiff does not say that he brings his action on behalf of or for the benefit of the city, but prays for an individual judgment against the Traction Company and the street Railway Company for $1,050,000.00 on account of taxes alleged to be due the city.

In the "fare case," no request was made of the city solicitor to bring such an action nor is it claimed that he has refused to do so. The citizens and the city have a vital interest in any question affecting the rate of street car fare, and such questions should not be decided without the city being a party or having an opportunity to be represented.

The "tax case" is identical, except as to the period of time involved, with an action brought in the Common Pleas Court by the same plaintiff against the same defendants to recover a similar tax for the year 1920 (No. 178421, Common Pleas Court of Hamilton County, Ohio). That action was dismissed by Judge Stanley Struble. The Court of Appeals for this county, upon proceedings in error by the plaintiff, held that

he had no right to maintain or bring such an action. In so deciding Judge Buchwalter said in part:

"General Code, Section 4314, provides for the bringing of certain actions by a taxpayer, upon the refusal of the city solicitor to do so. This action is not included in the ones there specified. So that under the Code, there is no authorization for the bringing of the present suit. * * *. We find no authority in Ohio to warrant the bringing of an action such as this by a taxpayer. The amended petition, therefore, should have been dismissed, without a determination on the merits. * * *. The judgment of the court below will be reversed, set aside, and held for naught, and the cause remanded to the Court of Common Pleas, with instructions to dismiss the action at the costs of the plaintiff."

The Supreme Court of Ohio overruled a motion by the plaintiff for a writ of certiorari (No. 18632, Supreme Court of Ohio). The decision of the Court of Appeals, therefore stands as the law and is controlling upon this court. The Court of Appeals having held that the plaintiff cannot maintain an action such as this and that decision having met the approval of the Supreme Court, this court has no alternative except to dismiss said action for want of capacity upon the part of the plaintiff to sue and without prejudice as to the merits.

By a parity of reasoning, the plaintiff has no capacity to sue to enjoin the rate of fare fixed by contract between the defendants and the city, without previously requesting the city solicitor to bring such an action and without making the city a party. This has been held by the Supreme Court in *Phelps, a Taxpayer,* v. *Logan Natural Gas & Fuel Co. et. al.,* 101 O. S., 144, Syllabus 3.

In the opinion of Judge Merrell, formerly a distinguished member of this court, it is held at page 147:

"The theory that the individual consumer has a vested interest in a contract made by his city with a public utility, and in the provisions thereof with respect to rates for service, finds no support in the authorities. The individual citizen is in no exact sense the direct beneficiary of such contract. The benefits and rights accruing to him thereunder are his by virtue of his membership in the municipal corporation. *The latter, embodying the collective citizenship, and representing the general welfare of its citizens, as distinguished from the*

*sum total of their divergent private interests, is therefore the real as well as the nominal party in interest in such contract."*

The court further held that the ordinance there in question (page 149) "was not open to attack on general grounds by the individual taxpayer, or gas consumer, suing either in his personal right, or, as here, on behalf of the public." Hence, the "fare case" must also be dismissed for a similar want of capacity to maintain such an action. If there is any error in this conclusion, we are convinced that there is no merit to the contention that the fare is limited to five cents by the act of April 23, 1898 (Section 2505-A Ohio Statutes, 93 O. L., 214).

It is true that this act authorized the traction company to lease the property and franchise of the street railway company, and provided that the then existing fare of five cents should not to be increased *"by reason of such lease,"* and that the fare should not exceed the maximum fare charged over any one of said lines prior to such lease or purchase.

However, subsequently, in 1912, the Constitution of Ohio was amended so as to confer complete power upon any municipality to,

"* * * acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for such product or service." (Article 18, Sec. 4, Constitution of Ohio, adopted September 3, 1912.)

The Supreme Court has frequently held that any provision of law which conflicts with the Constitution or limits the Constitutional power of a municipality to contract with a public utility for service, in invalid. In *Ohio River Power Co. v. City of Steubenville*, 99 O. S., 421, at page 428, Judge Donahue, speaking for a unanimous court, said:

"Therefore, when the utility names the rate at which it is willing to furnish its product, and the city accepts that rate on its own behalf and on behalf of its inhabitants, and enters into a contract, the terms of which include the rate so agreed upon, such contract, including the agreement as to rate, clearly comes within the authority conferred upon municipalities by Section 4, Article XVIII of the Constitution of Ohio; and if there were any conflict between the provisions of the Con-

stitution and the provisions of any statute of this state existing at the time or enacted since this constitutional amendment was adopted such statute must fall.''

In *City of Lima* v. *Public Utilities Commission*, 100 O. S., 416, the court said at page 423, concerning a public utility contract:

''* * * the authority to enter into a contract, such as that under review, being now expressly conferred by constitutional provision, any statute which purports to modify or restrict the power thus conferred would be in conflict therewith and must fall.''

In *Link et al.* v. *Public Utilities Commission et al.*, 102 O. S., 336, it is held in the first syllabus that Section 4, Article XVIII of the Ohio Constitution, is self executing and that ''no action of the Legislature is essential to empower a municipality and a public utility company to enter into a valid contract for the product or service of such utility company to be supplied to the municipality and its inhabitants.''

In that case, statutes enacted prior to the constitutional amendment of 1912, were not reconcilable with such amendment and the court said at page 338:

''No legislative act can in any wise modify or restrict the power conferred by constitutional provision, and therefore any provision of the statute inconsistent with the constitutional provision conferring such power must fall.''

The original fifty year franchise both in the terms of the law and in the terms of the grant provided for a revision of the rate of fare etc., at the end of the first twenty years thereof and at the end of each fifteen years thereafter. Hence (1) under the terms of the Rogers Law (92 O. L., 277, April 22, 1896), (2) under the terms of the franchise (August 13, 1896), and (3) under the Ohio Constitution (Article 18, Sec. 4), the city had specific power to contract with the defendants as to the rate of fare. (*State ex rel Campbell* v. *Cincinnati Street Railway Company et al.*, 97 O. S., 283, Johnson, J., at page 304, par. 3).

Section 2505-A does not limit the power of the city to contract with the defendants for service or the rates to be charged therefor.

In the present case, the city of Cincinnati acting through its legally elected representatives exercised its power to make the contract with the defendants embodied in Ordinance 253-1918. That contract was attacked as invalid in Case No. 57650, in this court, brought by John C. Rogers, as a taxpayer against the city of Cincinnati, the Cincinnati Street Railway Company, and the Cincinnati Traction Company. The plaintiff in his petition in that case said that Ordinance 253-1918 was "fatally defective and should not be enforced for the following reasons:

"2. Said ordinance provides for passenger rates, based on the receipts and expenditures of the defendant street-car companies, as therein set forth, but it does not provide that in no event shall such fares exceed the rates of fare in force on said street-car system, at the time said 'Rogers Law' was passed, namely, five cents, for each adult passenger, and three cents for children under ten years of age, and is in express violation of said law and the grant, 'Exhibit A,'' in not doing so. * * *."

"5. Among other things said ordinance provides: 'The rates of fare for each passenger carried over each of the routes and changes and extensions thereof and over each of any new and additional routes and changes and extensions thereof are hereby fixed as follows, being based upon the cost of service, which is defined to be the total sum, as nearly as practicable, required to make the payments provided to be made under the provisions of subdivisions A to G, both inclusive of paragraph 22 of said Exhibit B,' hereto attached and made a part hereof, and the said provision of said 'Exhibit B' not only violates said 'Rogers law,' in not providing that in no case should the rates of fare exceed the rates of fare in force at the time of the passage of said law, as aforesaid; etc. * * *."

The fare at the time said case was determined was five and a half cents and the invalidity of a fare in excess of five cents was directly put in issue. That case was contested before and decided by Hon. Frank R. Gusweiler, then a judge of this court. In the reported opinion, _Rogers v. City of Cincinnati et al._, 22 N. P., (N. S.) 401, Judge Gusweiler said at page 406:

"There is no provision that after the expiration of such twenty year period no increase of fare or decrease of car license fees or percentage tax on gross earnings shall be allowed, as is provided with reference to the time the franchises of the constituent company were originally extended to fifty years. On the contrary, the express injunction is that the terms of such revision shall be equitable according to the then cost of carry-

ing passengers. *It follows that this means that the fares orig-
inally charged may be either increased or reduced at the end
of the twenty year period,* if such increase or reduction 'be
equitable according to the then cost of carrying passengers * * *'

"The suggestion by plaintiff that it was the intention that the
fares might be revised downward and not upward finds no sup-
port in the language of the statute or of the grant. We fail to
see by any show of reason that the restriction on the rates of
fare provided in the Rogers law for the first twenty years shall
run for the full term of fifty years."

In conclusion, the court held at page 409:

"*Our finding is that the city of Cincinnati had the power
and authority to pass said ordinance and that the terms thereof.
are valid in every particular.*"

The judgment entry in that case, reads:

"This cause coming on to be heard upon the pleadings and the
evidence and the arguments of counsel, the court finds for de-
fendants on all the issues, and finds that the ordinance of the
city of Cincinnati referred to in the petition, being Ordinance
253-1918, is in all respects a legal and valid ordinance."

Although notice of appeal was given, no appeal or error was
taken and the judgment is a final adjudication by this court
of the validity of the present franchise. *Petersine* v. *Thomas,*
28 O. S., 596; Syl. 1; *Covington & Cincinnati Bridge Co.* v.
*Sargent,* 27 O. S., 233, at 238; *Strangward* v. *The American
Brass Bedstead Co.,* 82 O. S., 121; *Rothman* v. *Engel,* 97 O. S.,
77, 80.

Subsequently, Ordinance No. 142-1921 was adopted, deferring
for a time certain payments under Ordinance 253-1918 and
providing for a reduced rate of fare for school children. In
Case No. 58448, brought in this court by the city of Cincinnati,
against the Cincinnati Traction Company and the Cincinnati
Street Railway Company, to enforce specifically the provisions
of said ordinance, the court rendered a judgment which is
expressed in the entry in part as follows:

"This cause coming on to be heard on the petition and an-
swers and being argued by counsel, and the court being fully
advised finds that Ordinance 142-1921, of the city of Cincin-
nati, approved June 14, 1921, and referred to in the petition,
is a valid ordinance modifying the resolution adopted by the

board of administration of the city of Cincinnati, August 13, 1896, and attached to the petition.''

No appeal or error was ever taken from said judgment, which is a final adjudication of the validity of said ordinance. The words of our Supreme Court in the recent case of *State ex rel Willys-Overland Co.* v. *Clark et al.*, 112 O. S., 125, decided March 24, 1925, are particularly pertinent. The court said at page 129:

''Were we to sustain the demurrer in this case, we might as well announce that the doctrine *res judicata* is no longer of any force in the administration of justice. *Without this fundamental doctrine in full force and effect the proper enforcement of law would be quite impossible—there would be no end to any litigation.*''

The present franchise is a contract between the city and the defendants which imports a legal and moral obligation. It was adopted by council and approved by the mayor of Cincinnati as the legal representatives of the city. It was accepted by the defendants. No referendum was held. The validity of the contract was approved by the Superior Court of Cincinnati, April 19, 1919. The contract has been in effect for nearly seven years. Under these circumstances this court cannot now in conformity with the law and the facts, impose a five cent limit upon the fare and invalidate a contract heretofore held legal and under the terms of which valuable rights have become vested. To do so would be judicial confiscation—a greater evil in its permanent harm to society than the temporary hardship of high fares or poor service, much as both are to be deplored. The accomplishment of reduced fares or better service is not a judicial function. The solution of the traction problem is primarily an executive, administrative and legislative task for which the municipal government of Cincinnati is responsible. The court can neither make public utility contracts nor unmake contracts lawfully made by parties having capacity to contract and free from fraud provided they are substantially performed. No question of performance being raised in the present case, no opinion is expressed upon such point.

The present actions must therefore be dismissed.